Jason T. Brown (NJ Bar # 35921996)
Patrick S. Almonrode
 *(Pro Hac Vice application forthcoming)*
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
(877) 561-0000 (office)
(855-582-5297 (fax)
*jtb@jtblawgroup.com*

***Attorneys for Plaintiff and the Class***
**[Additional counsel on signature page]**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

**DANIEL SURIAGA**, on behalf of himself
and all others similarly situated,

|  |  |
|---|---|
| Plaintiff, | **No. 2:18-cv-16288** |
| v. | **CLASS ACTION COMPLAINT** |
| **GENERAL ELECTRIC COMPANY**, | **JURY TRIAL DEMANDED** |
| Defendant. | |

_____/

**<u>CLASS ACTION COMPLAINT</u>**

Plaintiff Daniel Suriaga ("Plaintiff"), through his undersigned counsel, brings this action on his own behalf and on behalf of a Class of persons and entities defined herein against Defendant General Electric Company ("Defendant" or "GE") and, for his Complaint, alleges, upon information and belief and based on the investigation to date of his counsel, as follows:

**<u>INTRODUCTION</u>**

1.      This action is brought individually by Plaintiff and on behalf of a class of persons similarly situated (the "Class" or "Class Members") who purchased GE Microwave Ovens

1

("Microwave" or "Product").  Plaintiff brings this class action to remedy violations of law in connection with Defendant's design, manufacture, marketing, advertising, selling, warranting, servicing and repairing of its Microwaves, which contain serious design and/or manufacturing defects, causing bubbling, peeling, cracking, flaking, and/or chipping of the coating of the interior cavity of the Microwaves ("Paint Peeling Problem"), which begins to manifest shortly after first use and renders them unfit for further use.

2.      GE has known (or reasonably should have known) for many years that these Microwaves were defective.  Upon information and belief, GE has known of the Paint Peeling Problem since at least 2005.  Yet, GE advises consumers on its own website that "[i]f the [interior] coating is actively flaking or paint is peeling anywhere inside the oven cavity (including under the turntable) … [t]he microwave is not repairable."[1]

3.      On information and belief, GE has undertaken a deliberate and willful pattern of conduct (including the taking of active measures) aimed at hiding the defects in its Microwaves from consumers, including Plaintiff and the proposed Class.

4.      The GE Microwaves fail prematurely, which requires consumers to discontinue using the Microwaves and to replace them at their own expense.

5.      As a result of Defendant's unfair, deceptive, fraudulent, and misleading practices, Plaintiff and Class Members have been deceived into purchasing the Microwaves which they would not otherwise have purchased; did not receive the benefit of their bargain; or purchased at a substantially higher price than they would have paid, had they known of Defendant's deception.

---

[1]  http://products.geappliances.com/appliance/gea-support-search-content?contentId=16197  (last accessed on August 3, 2018).

6.     As such, Plaintiff, individually and on behalf of the Class, asserts claims for violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1, *et seq*., breach of express warranty, breach of implied warranties, violations of the Magnuson-Moss Warranty Act, and unjust enrichment.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and many Members of the proposed Class are citizens of states different from that of the Defendant.

8.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in this judicial district and division, and intentionally and purposefully directed the Product into the stream of commerce, including the sale and distribution of the Product within New Jersey.

9.     Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because Defendant has advertised in this district and division and received substantial revenues and profits from sales of its Product in this district and division; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred within this district and division.

10.     Venue is also proper in this judicial district because Plaintiff Suriaga resides in this district.

## PARTIES

11.     Plaintiff Daniel Suriaga is a resident and citizen of Bergen County, New Jersey. Plaintiff purchased the Product in or about December 2012, from Best Buy in New Jersey.  Prior to purchase, Plaintiff read and relied on Defendant's false claims regarding the Product, as set

forth in this Complaint, and on the warranty provided by GE, the general reputation of GE for having quality products, and his expectations regarding the useful life of the Microwave.

12.     Defendant General Electric Company is a New York corporation with its principal place of business at 41 Farnsworth Street, Boston, Massachusetts 02210.  At all times relevant hereto, Defendant GE has conducted business throughout New Jersey, including Bergen County.

## FACTUAL ALLEGATIONS

13.     The Microwaves are branded with the "GE" logo and are sold as GE model microwave ovens.

14.     GE marketed the Microwaves under various names, such as "Profile," "Spacemaker," or "Over-the-Range" microwave ovens.

15.     The Microwaves contain common design and/or manufacturing defects that result in premature paint peeling inside the interior cavity of the Microwaves.  More specifically, the cause of the paint peeling is a defective coating and curing system used by GE.

16.     The Microwaves' interior walls are made of galvanized steel.

17.     The Microwaves' interior walls have a coated paint.  The metal of the walls corrodes under the paint due to cooking steam seeping through the paint.  The corrosion expands and lifts the coating system off of the surface, producing the Paint Peeling Problem.

18.     GE knew or should have known that steam would be produced inside the Microwaves as a result of their as-intended use by consumers.

19.     Had GE conducted sufficient testing of the Microwaves, it would have known that its coating and curing system was defective and would cause the Paint Peeling Problem.

20.     Had the Microwaves been properly manufactured and/or designed to be free from

4

defects, Plaintiff and the Class would not have suffered the damages complained of herein.

21.     GE admits that it has no remedy for the Paint Peeling Problem.  On its website, GE represents: "If the coating is actively flaking or peeling anywhere inside the oven cavity (including under the turntable) discontinue the use of the microwave and replace it. The microwave is not repairable."[2]  Additionally, when consumers complain to GE about the Paint Peeling Problem, GE representatives advise consumers to stop using the Microwave, rendering it useless for the consumer.

22.     Purchasers of GE Microwaves have voiced their frustration over the Paint Peeling Problems, yet GE has failed to adequately address their concerns.

23.     A number of complaints can be found online from consumers whose GE Microwaves have experienced paint peeling.  A small sample of those complaints appears below:

**Beti of Rockville, Maryland on Dec. 14, 2015**

"This is the second time GE has replaced the unit. The paint is peeling. The microwave is all rusty. The same thing happened to the first one too. It looks disgusting."[3]

**laura of Pearland, TX on Oct. 1, 2015**

"I will NEVER buy another GE product. They were not helpful over the phone when I explained to them about the paint peeling on the inside of my microwave. It's only 4 years old & should not be doing this."[4]

**Sharon of Cape May Court House, NJ on Sept. 9, 2015**

"We purchased 3 GE Profile Appliances when we remodeled our kitchen. It turns out that they are junk. The microwave and the refrigerator have had to be repaired several times … We now are living with a microwave that has peeling paint that I hope is not damaging our health that they would not do anything about… Don't buy GE unless you want Junk!"[5]

---

[2]  http://products.geappliances.com/appliance/gea-support-search-content?contentId=16197  (last accessed August 3, 2018).

[3] https://www.consumeraffairs.com/homeowners/ge_microwaves.html.

[4] https://www.consumeraffairs.com/homeowners/ge_microwaves.html?page=3.

[5] *Id.*

## Carolyn of Melbourne, FL on March 28, 2015

"We purchased a GE microwave/convection oven which developed peeling on the inside top of the microwave. GE contacted me and offered a replacement ($300 toward a shelf model or prorate the microwave/oven). Why would we take $300 replacement when we paid nearly $3000 for this oven???? So we took the prorated one directly from GE. We felt confident that we would not have a repeat of the problem. The oven was manufactured in December 2012. After it was delivered, I noticed a rough area on the turntable; and after the oven began to peel AGAIN on the second oven, I believe that the rough area was due to a remanufactured part on the oven.

Now we are stuck with another microwave/convection oven combo with the same issues as the first oven. I never used anything harsh to clean the oven and now this happens again. Why cannot this company manufacture an oven that will not have defects in it??? I am tired of peeling paint on a second oven when I have done nothing except pay them for 2 ovens. Why cannot they use stainless steel interiors, and this would stop the many complaints that people make about the product. I would NEVER again purchase another product from this company. The products I have purchased have been inferior. I paid for two microwave/convection ovens and still have one that is inferior!!!!"[6]

## bally of Red Bank, NJ on March 17, 2015

"I called GE, b/c the microwave has paint flaking off and piling on top of my food. Just like snow flakes. You tap the inside-ceiling with your index finger lightly and it looks like there's a snow fall inside the microwave. Lots of metal is exposed. GE answer: metal is non-toxic, do not worry if small amounts ingested! Told me to not use it anymore and replace it at my own cost. After insisting that they are responsible for a defective product, they will give me a "break" of $100 on the price, conditioned on them confiscating the above microwave ("so you or someone else does not use it"). Bad deal. I am looking for another brand!"[7]

## Mary of Hayward, CA on Oct. 13, 2014

"My husband and I bought my mom a new microwave, an expensive GE model. It was great, but then all of a sudden we heard a bang pop and the microwave was burnt. Now it's seriously peeling on the top bottom and sides. I HAVE NEVER SEEN THIS BEFORE EVER!"[8]

## Kelly of Murfreesboro, TN on July 17, 2014

"We bought this microwave (GE DE68-00307A) brand new 2 years ago and the paint is peeling off everywhere!!!! I keep my microwaves extremely clean, and this was not due to wear and tear by any means. I would say it started after about a year and a half of having it. I have showed multiple people and I cannot believe this is not on a recall list.

---

[6] *Id.*
[7] *Id.*
[8] http://www.consumeraffairs.com/homeowners/ge_microwaves.html.

This is extremely dangerous and could cause many issues. I am hoping someone can do something about this manufacturer and this product. This alone will make me never buy a GE product again."[9]

**Daryl of Turlock, CA on Oct. 16, 2013**

"We have a GE Profile Microwave/Oven combo unit. The paint is flaking off inside the microwave. Most of the ceiling paint is gone, and the floor of the microwave is flaking. Because we have a combo microwave and oven, the entire unit must be replaced. That's around $2400. We cannot match the color, because they don't make bisque appliances any more. GE customer service suggests we replace the microwave with a countertop model, leaving the dead microwave on the wall. This is unacceptable."[10]

**Hayley Krischer on November 26, 2012 by**

"But GE Microwave Oven, this is the second time in three years that your paint has peeled off the inside top of the oven, threatening my food with giant, white paint chips. And when you have 30 people at your house for Thanksgiving like I did, you need to use your trusty microwave to reheat dishes multiple times throughout the day. Except, I couldn't trust you or rely on you at all."[11]

**Maryanne of Parma, OH on July 29, 2013**

"The paint started peeling on the inside ceiling area of the microwave the end of the first year we bought it. I called GE and they claimed this was not harmful to the operation of the microwave. It was disgusting to have paint chips falling onto food we were cooking. Now almost all the paint is gone and there is some rust too. How can this be for cooking and what if some of the paint is accidentally ingested? If GE did not replace or offer to repair the problem. Stay away from GE microwaves is my advice."[12]

**margaret of East Aurora, NY on March 26, 2013**

"I purchased a GE microwave from Best Buy about a year ago. Every time I wipe it clean, white paint chips come off the inside. This cannot be safe for me or my children. I did contact the company and they were of no help at all. They said that because I heat up liquids in the microwave, this will happen. Duh! I would not recommend purchasing a GE product of any kind (oven, fridge, etc). Their customer service is awful and their products do not last."[13]

---

[9] *Id.*

[10] http://www.consumeraffairs.com/homeowners/ge_microwaves.html?page=2.

[11] http://femamom.com/2012/11/26/an-open-letter-to-my-defective-ge-microwave-oven/.

[12] http://www.consumeraffairs.com/homeowners/ge_microwaves.html?page=3.

[13] *Id.*

24.     In addition, numerous complaints can be found on Defendant's social media accounts, including Facebook and Twitter.  However, GE's employees titled "Social Media Communicators" offer no help to consumers.

25.     When consumers complain to GE, its customer service department offers little to no help to the consumer.  Sometimes Defendant offers to send out a technician to inspect the damage even though GE knows the Microwaves cannot be repaired.  However, GE charges the consumer approximately $100 just to come out to inspect a defective unit, and consumers are left to absorb any additional costs to replace the Microwaves.  Other times, GE will offer the consumer a meager credit for a similar model, GE-branded microwave oven—a mere fraction of the cost of a new microwave.

26.     The defects render the Microwaves unfit for the ordinary purpose for which they are intended, and have caused Plaintiff and members of the Class to suffer damages, including, but not limited to, the difference in their value as warranted and the value as received; loss of use of the Microwaves; labor/inspection costs; and replacement costs.  The defects were the direct, proximate, and foreseeable cause of the damages incurred by Plaintiff and members of the Class.

27.     Defendant expressly and impliedly warranted, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that their Microwaves are fit for the ordinary purpose for which such goods are used.

28.     The bargaining power between Plaintiff and Class members on the one hand and GE on the other hand was grossly unequal, and any limitations on the warranty are substantially one-sided, making such limitations unconscionable.

29.     Contrary to its representations, the GE Microwaves are not of merchantable quality, not fit for their intended use, and are defective.

30.     The representations made by GE were false or misleading and GE knew or should have known at the time it made them that they were false or misleading.

31.     The Paint Peeling Problem in the Microwaves renders the Microwaves unfit for their ordinary purpose because, when consumers complain to GE about the Paint Peeling Problem, the company recommends that customers discontinue using their Microwaves.

32.     Had the Microwaves been properly manufactured or free from design defects, Plaintiff and the Class would not have suffered the damages complained of herein.

**PLAINTIFF SURIAGA'S EXPERIENCE WITH HIS GE MICROWAVE**

33.     In or around December 2012, Plaintiff Suriaga purchased a GE Microwave, model JES1142SP1SS, for approximately $200 at Best Buy in Hudson County, NJ.

34.     This GE-branded Microwave, serial number RZ207453G, was manufactured by Galanz in August 2012 and shipped to the Best Buy Distribution Center in Nichols, NY in November 2012.

35.     Plaintiff purchased the unit because he thought GE was a reliable brand that would provide him with a Microwave that would last at least 10 years.

36.     Plaintiff's Microwave is a countertop unit.

37.     Approximately two years after purchase, Plaintiff began to notice that his Microwave was exhibiting the Paint Peeling Problem.

38.     Soon thereafter, he notified GE, who said they would send a technician out to inspect the damage for a cost of $100 to Plaintiff.  Plaintiff could not afford to spend $100 on the service visit, so he declined GE's offer.

39.    The following photographs were taken by Plaintiff only a few years after purchasing his Microwave, and depict the Paint Peeling Problem:



Fig. 1



Fig 2



Fig. 3

40.     Due to the defects in his Microwave, Plaintiff fears that the paint peeling will only get worse and could result in paint chips falling, undetected, into his food while it is being heated.  As such, Plaintiff has stopped using his Microwave.

41.     Had Plaintiff known of the Paint Peeling Problem, Plaintiff would either not have purchased the Microwave or would have paid a lower price based on this knowledge.

**TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS**

42.     Any otherwise applicable statute of limitations has been tolled by GE's knowing and active concealment of the Paint Peeling Problem. GE kept Plaintiff ignorant of vital information essential to the pursuit of his claim, without any fault or lack of diligence on the part of Plaintiff.  Plaintiff could not have reasonably discovered the fact that his Microwave would exhibit the Paint Peeling Problem due to the manufacturing/design defects.

43.     GE was and is under a continuous duty to disclose to Plaintiff the true character, quality, and nature of his Microwave.  At all relevant times, and continuing to this day, GE

11

knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Microwaves. Plaintiff reasonably relied upon GE's affirmative misrepresentations and knowing, affirmative, and/or active concealment. Based on the foregoing, GE is estopped from relying on any statutes of limitation in defense of this action.

## THE PURPORTED WARRANTY LIMITATIONS ARE VOID AND INVALID

44. Upon information and belief, GE provides a warranty to purchasers of GE Microwaves, which is located at the end of a user manual containing over twenty pages. The user manual is included in the Microwaves' packaging. The GE Warranty is attached hereto as **Exhibit A**.

45. The GE Warranty purports to disclaim certain warranties and damages, stating:

> Exclusion of Implied Warranties – Your sole and exclusive remedy is product repair as provided in this Limited Warranty. Any implied warranties, including the implied warranties of merchantability or fitness for a particular purpose, are limited to one year or the shortest period allowed by law.

*Id*.

46. The above warranty limitations are unenforceable because they are unconscionable.

47. The limitations are procedurally unconscionable because of the imbalance of bargaining power between the parties, and because Plaintiff lacked a meaningful choice of whether to accept the warranty limitations. Here, Plaintiff had no ability to negotiate around or waive the warranty limitations and the terms were presented on a take-it-or-leave-it basis.

48. The warranty limitations are substantively unconscionable because, as set forth above, GE had knowledge of the design defect (i.e. the high-incidence of Paint Peeling Problems) at the time Plaintiff and each member of the Class purchased their respective Microwaves.

49.     The above warranty limitations also fail their essential purpose because the GE Microwaves contained Paint Peeling Problems and were defective at the time Plaintiff and members of the Class acquired their Microwaves.

50.     The warranty purports to provide consumers like Plaintiff with a "repair" of the Microwaves.   However, by GE's own admission, Microwaves that exhibit the Paint Peeling Problem are "not repairable."

51.     The above warranty limitations also fail of their essential purpose because no remedies offered by GE give purchasers the benefit of their bargain, i.e., a merchantable Microwave and one that lasts for its expected useful life.

52.     The limitation of damages is ineffective because the GE Microwaves sold to consumers are unreasonably susceptible to Paint Peeling Problems, which none of GE's limited remedies sufficiently address.   The GE Warranty fails in its essential purpose, and Plaintiff and the Class are entitled to a remedy under the Uniform Commercial Code.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

54.     Plaintiff seeks to represent a New Jersey State Class defined as follows:

All persons residing in the State of New Jersey who purchased a GE-branded Microwave oven since the date of first manufacture for primarily personal, family or household purposes, and not for resale.

Excluded from the Class are: Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; all governmental entities; and the Judge to whom this case is assigned and any immediate family members thereof.

55.     Certification of the Plaintiff's claims for class wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

56.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The Members of the Class are so numerous that individual joinder of all Class Members would be impracticable. On information and belief, thousands of consumers have been affected by the Defendant's wrongful conduct.  The precise number of Class Members and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendant's books and records.  Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

57.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

    a.     Whether the GE Microwaves are defectively designed and/or manufactured;

    b.     Whether GE knew or reasonably should have known about the Paint Peeling Problem prior to distributing the Microwaves to Plaintiff and the Class;

    c.     Whether GE concealed from and/or failed to disclose to Plaintiff and the Class the Paint Peeling Problem with the Microwaves;

    d.     Whether GE knew or reasonably should have known about the Paint Peeling Problem after distributing the Microwaves to Plaintiff and the Class;

    e.     Whether the Microwaves, when used by consumers in a normal and customary manner and/or in accordance with GE's suggested use, works as advertised, marketed, and conveyed to consumers;

    f.     Whether, in the course of business, GE represented that the Microwaves have characteristics, uses, benefits, or qualities that they do not have when used by

consumers in a normal and customary manner and/or in accordance with GE's suggested use;

g.      Whether the claims GE made regarding the Microwaves are unfair or deceptive;

h.      Whether GE knew at the time the consumer transactions took place that consumers would not receive the promised benefits of the Microwaves that Defendant was claiming they would receive;

i.      Whether GE knowingly made misleading statements in connection with consumer transactions that consumers were likely to rely upon to their detriment;

j.      Whether GE knew or should have known that the representations and advertisements regarding the Product were unsubstantiated, false, and misleading;

k.      Whether GE has breached express and implied warranties in the sale and marketing of the Microwaves;

l.      Whether GE's acts and omissions violated New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*,

m.      Whether GE has violated the Magnuson-Moss Warranty Act;

n.      Whether GE has been unjustly enriched by the sale of the Microwaves to the Plaintiff and the Class;

o.      Whether Plaintiff and the Class did not receive the benefit of their bargain when purchasing the Microwaves;

p.      Whether GE should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective Microwaves;

q.      Whether the Plaintiff and the Class suffered monetary damages, and, if so, what is the measure of those damages;

r.      Whether Plaintiff and the Class are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

58.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Class Members' claims because, among other things, all Class Members were similarly injured through the uniform and common misconduct described above.

59.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class Members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he intends to prosecute this action vigorously.  The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.

60.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class Members as a whole.

61.     **Superiority – Federal Rule of Civil Procedure 23(b)(3)**.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress from Defendant's wrongful conduct.  Even if Class Members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

62.     **Ascertainability - Federal Rule of Civil Procedure 23(b)(3)**.  The members of the Class are ascertainable as each GE Microwave contains an identification plate in the interior cavity that provides the Model Number, Serial Number, and Date of Manufacture of the Microwave.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J.S.A. § 56:8-1, *et seq.*)
### On Behalf Of Plaintiff and the Class

63.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

64.     Plaintiff and Defendant are "persons" within the meaning of the New Jersey Consumer Fraud Act ("CFA").

65.     Plaintiff and the Members of the Class are "consumers" within the meaning of the CFA.

66.     At all relevant times material hereto, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

67.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

68.     Defendant's practices violated the CFA for, *inter alia*, one or more of the following reasons:

  a.     Defendant represented to Plaintiff and the Class that the Product had approval or characteristics that it did not have;

  b.     Defendant represented to Plaintiff and the Class that the Product was of a particular standard, quality, or grade when it was actually of another;

  c.     Defendant advertised to Plaintiff and the Class goods with intent not to sell them as advertised;

    d.     Defendant engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

    e.     Defendant represented that consumers' purchases of the Product conferred or involved rights that the transactions did not have or involve.

69.    Defendant consciously omitted to disclose material facts to Plaintiff and the Class with respect to the Product.

70.    Defendant intended that Plaintiff and Class rely on its acts of concealment and omissions and misrepresentations, so that Plaintiff and the Class would purchase the Product.

71.    Had Defendant disclosed all material information regarding the Product to Plaintiff and the Class, they would not have purchased the Product, or would have paid less for the Product.

72.    The foregoing acts, omissions and practices proximately caused Plaintiff and the Class to suffer an ascertainable loss in the form of monetary damages, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (N.J. Stat. Ann. § 12A:2-313)
### On Behalf of Plaintiff and the Class

73.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

74.    As an express warrantor and manufacturer and merchant, Defendant had certain obligations under N.J. Stat. Ann. § 12A:2-313 to conform the Product to the express warranties.

75.    Defendant GE expressly warranted via its user manuals, advertisements, pamphlets, brochures, circulars, samples, and models that the Microwaves are fit for the ordinary purpose in which such goods are used.

76.     GE's express warranties were part of the basis of the bargain between GE and Plaintiff and Class Members.

77.     GE breached its express warranty because the Microwaves were not fit for the ordinary purpose in which such goods are used.  Specifically, the Microwaves contained defects that caused the Paint Peeling Problem, rendering the Microwaves unusable for their ordinary purpose.  GE also breached its express warranty by refusing to repair and/or replace Microwaves damaged by the defects for the Class as a whole.

78.     Plaintiff and Members of the Class may be presumed to have relied upon the representation and/or warranty that they would be supplied a microwave oven free of defects.

79.     Plaintiff and the Class Members performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

80.     Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective and adequate remedy.

81.     As a result of Defendant's breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. Stat. Ann. § 12A:2-314)
### On Behalf of Plaintiff and the Class

82.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

83.     Defendant is and was at all relevant times a merchant with respect to the Product.

84.     A warranty that the Product was in merchantable quality and condition is implied by law pursuant to N.J. Stat. Ann. § 12A:2-314.

85.     Defendant impliedly warranted that the Product was of good and merchantable condition and quality – fit and safe for their ordinary intended use.

86.     The Product was defective at the time it left the possession of Defendant, as set forth above, and Defendant knew of this defect at the time these transactions occurred.  Thus, the Product, when sold and at all times thereafter, was not in merchantable condition or quality and is not fit for its ordinary intended purpose.

87.     The Product did not provide Plaintiff and the Class with the full benefit of the bargain as the Microwave did not last for the duration of its intended and expected useful life.

88.     By virtue of the conduct described herein and throughout this Complaint, Defendant breached the implied warranty of merchantability.

89.     Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's breach of the implied warranty.

90.     Plaintiff has used the Product in a manner consistent with its intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's conduct.

91.     Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective and adequate remedy.

92.     As a direct and proximate result of Defendant's breach of warranties, Plaintiff and the Class were caused to suffer damages.

<u>COUNT IV</u>
**MAGNUSON-MOSS – BREACH OF EXPRESS WARRANTY**
**(15 U.S.C. § 2301 *et seq.*)**
**On Behalf of Plaintiff and the Class**

93.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

20

94.     Plaintiff brings this claim pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

95.     Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3) who received the Microwave during the duration of the warranty period applicable and who is entitled by the terms of the warranty to enforce against the Defendant the obligations of the express written warranties.

96.     The Microwave described above is a "consumer product" as defined in 15 U.S.C. § 2301(1) because it is normally used for personal purposes and Plaintiff in fact purchased it wholly or primarily for personal use.

97.     GE is the manufacturer of the Microwave.

98.     GE is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

99.     The warranty described above is a "written warranty" as defined in 15 U.S.C. § 2301(6).

100.    Plaintiff's purchase of the Microwave was induced by the manufacturer's warranty.

101.    Section 2310(d) of the Magnuson-Moss Warranty Act provides, in relevant part:

a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief – (b) in an appropriate district court of the United States

102.    As described above, the Microwave is defective, either with respect to material, workmanship, design, and/or manufacture, and, on information and belief, such defects existed when it left the manufacturer GE and were known, or should have been known, by GE.

103.    Plaintiff notified Defendant of the defect in the Microwave within a reasonable amount of time after Plaintiff discovered the breach.

104.    Defendant admits it cannot repair the defects; consequently, Defendant breached the express warranty.

105.    Defendants' breach of the express warranty constitutes a violation of 15 U.S.C. § 2310(d).

106.    As a result, Plaintiff has never received the full use and value of the Microwave as warranted and suffered damages as a result.

**COUNT V**
**MAGNUSON-MOSS – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(15 U.S.C. § 2301(7))**
**On Behalf of Plaintiff and the Class**

107.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

108.    The Microwave was covered by an implied warranty of merchantability as defined in 15 U.S.C. § 2301(7).

109.    Defendant is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer as set forth in 15 U.S.C. § 2308.

110.    Under the implied warranty of merchantability, a manufacturer's or seller's product must be substantially free of defects in both material and workmanship and thereby fit for the ordinary purpose for which the product is used, and that product is acceptable in trade for the product's description.

111.    Notwithstanding the aforementioned duty, at the time of attempted delivery, Defendant sold to Plaintiff a Microwave which was not merchantable and thereby not fit for the ordinary and essential purpose for which the Microwave was intended.

22

112.     As a result of the beach of the implied warranty of merchantability, Plaintiff sustained damages.

## COUNT VI
## UNJUST ENRICHMENT
### On Behalf of Plaintiff and the Class

113.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

114.     Through its numerous misleading, unfair and deceptive claims and misrepresentations, Defendant made millions of dollars from the sale of the Microwaves.  The considerable profits were made at the expense of Plaintiff and each Member of the Class, who relied upon Defendant's material representations and omissions.

115.     Plaintiff and Class Members conferred benefits on Defendant by purchasing the Product, which Defendant knowingly appreciated and accepted.

116.     Defendant, however, retained that benefit under circumstances that make it unjust and inequitable for Defendant to retain it without paying Plaintiff and members of the class the value thereof.  Specifically, Defendant retained that benefit despite the fact that the Microwaves were defective.

117.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for Defendant's unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Daniel Suriaga, on behalf of himself and all others similarly situated, respectfully requests that the Court enter an Order awarding the following relief:

A.   Declaring that this action may be maintained as a class action, certifying the Class as requested herein, appointing Plaintiff as Class Representative, and appointing the undersigned as Class Counsel;

B.  Enjoining Defendant from the unlawful practices and statutory violations asserted herein;

C.  Declaring Defendant's practices to be unlawful;

D.  A judgment awarding Plaintiff and each of the other Members of the Class their actual damages in an amount according to proof as to Defendant's unlawful conduct, as alleged herein;

E.  A judgment awarding Plaintiff and each other Member of the Class compensatory, consequential, and special damages in amounts to be proven at trial, as well as statutory damages;

F.  An award of punitive damages, to the maximum extent permitted by law;

G.  A judgment awarding Plaintiff and the other Members of the Class restitution, including, without limitation, disgorgement of all profits and unjust enrichment obtained by Defendant as a result of its wrongful conduct, as alleged herein;

H.  An award of delay damages, to the maximum extent permitted by law;

I.  Attorneys' fees, expenses, and the costs of this action to the maximum extent permitted by law;

J.  An award of pre- and post-judgment interest; and

K.  All other and further relief that the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff Daniel Suriaga hereby demands a trial by jury of all claims in this Class Action Complaint so triable.

Date:  November 19, 2018                              Respectfully submitted,

*/s/ Jason T. Brown*
Jason T. Brown (NJ Bar # 35921996)
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
(877) 561-0000 (office)
(855-582-5297 (fax)
jtb@jtblawgroup.com

Jonathan Shub
   (*Pro Hac Vice application forthcoming*)

Kevin Laukaitis
  *(Pro Hac Vice application forthcoming)*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700
Fax: (215) 238-1968
Email:   jshub@kohnswift.com
          klaukaitis@kohnswift.com

Richard J. Burke
  *(Pro Hac Vice application forthcoming)*
Jamie E. Weiss
  *(Pro Hac Vice application forthcoming)*
**QUANTUM LEGAL LLC**
513 Central Avenue, Suite 300
Highland Park, Illinois 60035
Tel: (847) 433-4500
Fax: (847) 433-2500
Email: Rich@QuLegal.com
          Jamie@QuLegal.com

*Attorneys for Plaintiff and the Class*